**James W. WELLHAM,**
**Plaintiff–Appellant,**

v.

**Richard B. CHENEY, Secretary of Defense, in his official capacity as Secretary of Defense; Charles McCauslind, Lt. Gen., Director of the Defense Logistics Agency in his official capacity as Secretary of the Defense Logistics and Gerald Werfel, Special Assistant for Contracting Integrity, Defendants–Appellees.**

**No. 90–8615.**

United States Court of Appeals,
Eleventh Circuit.

June 24, 1991.

---

Karl Dix, Jr., Spencer D. Weiss, Atlanta, Ga., for plaintiff-appellant.

Daniel A. Caldwell, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by James W. Wellham ("Wellham") from an order of the District Court for the Northern District of Georgia denying his motion for summary judgment and his request for an injunction and granting a motion for summary judgment filed by the appellees, Richard B. Cheney, Secretary of Defense, in his official capacity as Secretary of Defense, Lieutenant General Charles McCauslind, Director of the Defense Logistics Agency ("DLA"), in his official capacity as the Director of the DLA, and Charles Werfel, Special Assistant for Contracting Integrity. We affirm.

## I. STATEMENT OF THE CASE

On January 18, 1989, appellee Werfel debarred Wellham from contracting with the United States government for a period of one year to end on August 16, 1989. On the day that Wellham's debarment expired, he filed suit in the United States District Court for the Northern District of Georgia against Cheney, McCauslind, and Werfel seeking a declaratory judgment that the debarment was arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), and seeking an injunction to prohibit the DLA from taking further debarment actions against him based on his contracting improprieties in 1982 and 1983.

The appellees moved for summary judgment, and Wellham filed a cross-motion for summary judgment. After hearing oral arguments, the district court granted the appellee's motion for summary judgment, thus upholding Wellham's debarment. The court denied Wellham's motion for summary judgment, his request for a prelimi-

nary injunction, and his request for a permanent injunction. Wellham appeals from this order.

## II. STATEMENT OF THE FACTS

In 1982 and 1983, Wellham and the company that he owned and operated, American Specialty Metals ("ASM"), submitted nonconforming materials under several Defense Department contracts and purchase orders. Wellham and ASM also submitted false reports certifying that the materials met all specified requirements when, in fact, they did not.

The United States Attorney's Office in Nashville, Tennessee initiated an investigation into this misconduct and entered into a plea agreement with Wellham in March of 1984. The agreement provided that Wellham would cooperate with the government in its investigation of the alleged bribery of certain public officials in connection with Wellham's contracting and would help identify defective products supplied to the government. In exchange, the government agreed to charge Wellham with only "one count involving bribery of a public official and one count involving his contracting with the United States" to which Wellham would plead guilty. The agreement also explicitly provided that "there is no agreement concerning the issue of debarrment [sic] by any Government agency for Mr. Wellham's participating in any future Government contract or for any civil penalties."

Pursuant to the plea agreement, the government deposed Wellham in September of 1984. At the deposition, Wellham testified generally that he had provided non-conforming materials under government contracts and admitted that he or employees under his direction had submitted false test reports or certificates of conformance for the non-conforming materials. Wellham referred specifically to some contracts and purchase orders but did not mention the particular contracts for which he was later convicted.

Also pursuant to the plea agreement, Wellham sent a letter to the Inspector General of the Department of Defense listing all of the contracts under which Wellham or ASM might have submitted non-conforming materials. This list included the two contracts for which Wellham was later convicted. Wellham, however, did not forward a copy of this letter to the Office of Contracting Integrity, and the government claims that the office never received the letter. The Inspector General of the Department of Defense was under no obligation to send the letter on to the Office of Contracting Integrity.

On April 30, 1985, the DLA debarred Wellham and ASM, along with National Metals Corporation ("NMC") (ASM's successor corporation), Cynthia Boyers (a.k.a. Cynthia Boyers Wellham, Wellham's wife), and another company owned by Wellham known as Design Standards Group ("DSG"), from contracting with the government for a period of three years, ending on December 28, 1987 (the "1985" debarment). The debarment order was accompanied by a memorandum explaining the grounds for the debarment. The memorandum listed four findings relevant to this appeal.

(1) ASM supplied metal bars to the government pursuant to purchase orders DLA500–81–M–R354 and DLA500–83–M–FR81 that did not conform to specified standards.

(2) ASM supplied materials to the government pursuant to purchase orders DLA500–82–W–V228 and DLA500–82–W–W410 which did not conform to specified standards.

(3) "Fraudulent test reports or certificates of conformance to Government specifications were prepared at ASM. On metal to be supplied to the Government by DSG, ASM placed marks to indicate that the metal met the specifications in the DSG/Government contracts which, in fact, the metal did not meet."

(4) Contract DLA500–82–C–1652, issued to ASM by DISC, required delivery of 1270 sheets of titanium. A claim was sent to the Government indicating that 1269 sheets of titanium were shipped under the contract when in fact between 935 and 950 sheets were actually shipped. Mr. Wellham

knew of the discrepancy between the number of sheets shipped and the number claimed to have been shipped.

The DLA memorandum concluded that Wellham's contracting improprieties violated 48 C.F.R. § 9.406–2(b) ("Willful failure to perform in accordance with the terms of one or more contracts....") and 48 C.F.R. § 9.406–2(c) ("Any other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor or subcontractor.").

Wellham continued to cooperate with the government under the terms of the plea agreement until the Justice Department concluded its investigation in 1987.[1] At that point, the government filed a criminal information against Wellham in the United States District Court for the Middle District of Tennessee charging Wellham with two counts of making false statements in violation of 18 U.S.C. §§ 1001 and 1002.[2] It alleged that Wellham submitted reports certifying that items supplied under contracts DLA500–81–C–6249 and DLA500–83–0–0494 met all specified requirements when, in fact, he knew that they did not.

Pursuant to the 1984 plea agreement, Wellham pleaded guilty to both charges in July of 1987 and was sentenced to a prison term of one year and one day and five years probation.

After Wellham served his prison sentence, the DLA informed him that it intended to debar him again based on his recent conviction. Wellham protested, arguing that his 1984 debarment encompassed the same wrongdoing for which the DLA again sought to debar him and that this was prohibited under the applicable regulations. The DLA rejected his protests and debarred him for a period of one year, ending August 16, 1989 (the "1989" debarment).

## III. DISCUSSION

The memorandum accompanying the DLA's 1989 decision gave two reasons for the debarment: (1) Wellham submitted false certificates of conformance in connection with contracts DLA500–81–C–6249 and DLA500–83–0–0494 and (2) Wellham's recent conviction involving this misconduct. Wellham contends that neither of the DLA's reasons are sufficient to justify a debarment under the applicable federal regulations.

All contracts with the Department of Defense are governed by the Federal Acquisition Regulations (FAR), 48 C.F.R. Chapter 1, and the Department of Defense FAR Supplement (DFARS), 48. C.F.R. Chapter 2. Under 48 C.F.R. § 9.406–4(b), "a debarment may not be extended solely on the basis of the facts and circumstances upon which the initial debarment action was based." Wellham contends that the DLA's decision to debar him in 1989 was based solely on the same facts and circumstances upon which his 1985 debarment was based.

According to Wellham, his first debarment in 1985 "encompassed all of [his] improper conduct in contracting with the Government during 1982–1983." Wellham contends that the DLA knew in 1984 that he had submitted false certificates of conformance in connection with contracts DLA500–81–C–6249 and DLA500–83–0–0494 and that the DLA took that information into consideration when it made its 1985 debarment decision. Consequently, he claims, the government cannot now characterize that information as a new fact or circumstance sufficient to justify another debarment.

Likewise, Wellham argues that the additional fact of his conviction for making

---

1. In May of 1985, the Government filed a civil suit against Wellham in the Middle District of Pennsylvania. It sought recovery for losses associated with Wellham's contracting improprieties under the False Claims Act, 31 U.S.C. § 3729. The parties agreed to a Consent Judgment. This agreement, however, made no reference to any further debarment that might be based on Wellham's contracting misconduct in 1982 and 1983.

2. While the original plea agreement provided that Wellham would plead guilty to one count involving his bribery of a public official and one count involving his contracting with the government, the Justice Department decided not to pursue the bribery charge and, instead, substituted an additional charge involving Wellham's contracting.

these false statements is not a new fact or circumstance for the purposes of 48 C.F.R. § 9.406–4(b). Wellham claims that the DLA knew of his agreement to plead guilty to at least one charge "involving his contracting with the United States" at the time of his 1985 debarment. It knew that this agreement would eventually ripen into a conviction and must have taken this into account when it debarred him in 1985. Consequently, Wellham claims that the DLA employed an "unduly narrow interpretation of the phrase 'facts and circumstances.'"

While Wellham certainly has a credible argument, that is not sufficient to overturn the ruling of an administrative agency. It is well-settled that this court will reverse an agency's decision only if it is arbitrary and capricious. *North Buckhead Civic Assoc. v. Skinner*, 903 F.2d 1533, 1538 (11th Cir.1990) (citing 5 U.S.C. § 706(2)). Thus, the sole issue in this case is whether the DLA acted arbitrarily or capriciously in determining that Wellham's 1987 conviction for making false statements and the actions on which that conviction was predicated were new facts and circumstances for the purposes of 48 C.F.R. § 9.406–4(b).

### A. Making False Statements.

■ The interpretation of 48 C.F.R. § 9.406–4(b) appears to be a matter of first impression for this court. Neither of the parties has directed our attention to any decision from this circuit or elsewhere shedding any light on the meaning of this regulation, and a careful search of our own has turned up no judicial opinions on the matter. Nonetheless, we find the issues presented by this case easy to resolve.

Whatever the precise meaning of 48 C.F.R. § 9.406–4(b), the DLA certainly acted reasonably in finding that Wellham's false statements about contracts DLA500–81–C–6249 and DLA500–83–0–0494 were not "facts or circumstances upon which the initial debarment was based." In the memorandum accompanying Wellham's 1985 debarment, the DLA explained that he was being debarred for supplying non-conforming materials on purchase orders DLA500–

81–M–R354, DLA500–83–M–FR81, DLA500–82–W–V228, and DLA500–82–W–W410 and for submitting "fraudulent test reports or certificates of conformance." In 1989, the memorandum accompanying the debarment explained that Wellham was being debarred for submitting false statements in connection with contracts DLA500–81–C–6249 and DLA500–83–0–0494. Since these particular wrongful acts were never specifically mentioned as grounds for the initial debarment, the DLA acted reasonably in finding that they were new facts, justifying the 1989 debarment. It was perfectly reasonable for the DLA to conclude that the 1985 finding that Wellham had submitted "fraudulent test reports or certificates of compliance" referred only to the purchase orders specifically mentioned in the memorandum and not generally to the whole of Wellham's contracting misconduct in 1982 and 1983.

### B. Conviction.

■ We also agree with the district court that Wellham's conviction for making false statements in violation of 18 U.S.C. §§ 1001 and 1002 is a new fact or circumstance justifying further debarment. Under the FAR, a contractor may be debarred for any one of three reasons: (1) a conviction or civil judgment for any one of the specified offenses, which include fraud and making false statements, 48 C.F.R. § 9.406–2(a); (2) a serious "[v]iolation of the terms of a Government contract," 48 C.F.R. § 9.406–2(b); or (3) "[a]ny other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor or subcontractor." 48 C.F.R. § 9.406–2(c). The regulations quite clearly refer to each as a separate and distinct "cause" for debarment. Thus, we hold as a matter of law that a conviction is a new fact or circumstance for the purposes of 48 C.F.R. § 9.406–4(b). A debarment based on a conviction or civil judgment is not based solely on the same facts or circumstances as a debarment based on a "violation of the terms of a Government contract" or "any other cause of [a] serious or compelling nature."

We agree with the district court that Wellham's 1989 debarment was not based solely on the same facts and circumstances as his 1985 debarment.[3]

## IV. CONCLUSION

For the forgoing reasons we AFFIRM the memorandum and order of the district court below.

**3.** Wellham raises two other issues on appeal. First, he claims that the DLA in 1989 should have given him credit for the time he was debarred from 1984 to 1987. Second, Wellham argues that his 1989 debarment was impermissibly punitive. We reject both of his contentions.

The crux of Wellham's first argument is that his 1985 debarment was really just a "suspension" preceding his 1989 debarment because the 1989 debarment was based on the same facts and circumstances as the initial debarment. Since we have already concluded that the 1989 debarment was not based on the same facts and circumstances as the 1985 debarment, we reject Wellham's argument. The 1985 debarment was not a "suspension," and the DLA properly calculated the length of Wellham's 1989 debarment.

Likewise, we reject Wellham's argument that the 1989 debarment was impermissibly puni-

tive. The regulations provide that "[t]he serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest for the Government's protection and not for purposes of punishment." 48 C.F.R. § 9.402(b). The DLA, however, specifically found that "[d]ebaring Mr. Wellham is not punishment for past acts. It is an action to protect the Government's interests from a contractor who is not presently responsible."

Once again, the accuracy of the DLA's conclusions are debatable, but they are clearly not arbitrary or capricious. Even though Wellham's wrongful acts occurred several years ago, it is perfectly rational for the DLA to conclude that they still indicate a present lack of responsibility to contract with the government. The DLA, as the finder of fact, is free within reason to reject Wellham's arguments to the contrary.